ORAL ARGUMENT NOT YET SCHEDULED

In the
# UNITED STATES COURT OF APPEALS
For the District of Columbia Circuit

_____

Appeal No. 24-5052
_____

CASSANDRA M. MENOKEN,

*Plaintiff-Appellant,*

*vs.*

ANDREA R, LUCAS, ACTING CHAIR,
UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, *et al.*,

*Defendant-Appellees.*

_____

*On Appeal from the United States District Court
for the District of Columbia in Case No.* 1:16-cv-02480-DLF
Honorable Dabney L. Friedrich
_____

## REPLY BRIEF OF APPELLANT
_____

*Submitted by:*

Cassandra M. Menoken, Esq.
131 Tennessee Avenue N.E.
Washington, D.C. 20002
(202) 546-7671
CMMEsqDC@gmail.com
*Pro se*

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES
*And*
# RESPONSE TO GOVERNMENT'S CERTIFICATE AS TO SAME [1]

The Undersigned, in her capacity as a party to this appeal and an officer of the court, herein amends the Certificate as to Parties Rulings and Related Cases filed with Appellant's Brief as corrected on March 3, 2025. The Court is advised that the decision to amend was heavily influenced by the Undersigned's assessment of the "certification" filed by EEOC's Government Counsel on March 14, 2025.[2] As a result, this filing includes responses for the Court to consider in assessing the truth and trustworthiness of the "certification" in the Government's March 14 filing.

I.   **Parties and Amici**

<u>Parties</u>

The Appellant, Cassandra M. Menoken, was the plaintiff in the district court proceeding. Charlotte A. Burrows (now former) Chair of the United States Equal Employment Opportunity Commission <u>*and*</u> EEOC were defendants in that proceeding. Andrea R. Lucas, current Acting EEOC Chair, is an Appellee in this proceeding. The "Commission"-- EEOC's policy and oversight body -- *has never been -- and is not now -- a party to this action*.

---

[1]   Appellees are collectively referred to herein as the "Government." And while AUSA Dreier is personally responsible for filings bearing his signature, the term "Government Counsel," as used herein, encompasses all participating DOJ attorneys as well as Julie Ferguson Queen, Esq. and Anabia Hasan, Esq., -- in the Offices of General Counsel in OPM and EEOC -- (and others unknown at this time).

[2]   *See* Brief for Appellee ("EEOC Brf.") at i-iii.

i

While acknowledging that EEOC has been *treated* as a party, Government Counsel appears to question the Undersigned's certification identifying it as such. [3] Citing (among other sources) Judge Friedrich's purported "finding" on the matter -- based on the transcript of a December 19, 2023 hearing -- Government Counsel directs attention to the following statement in her dismissal Order: "**[T]he parties agree**…**the Commission Chair is the sole defendant in this case**…." [R. 116] A1195 at n.1 (bolding added). However, the cited transcript reveals no such "agreement" between the parties-- only the Court's blind acceptance of AUSA Dreier's *assertion* that there was agreement [4] -- which is *not true*. In any event, it is unclear how the Government's position that the Chair is the "only" defendant can be squared with random filings implying (despite Menoken's objections) that its Counsel represent the "Commission" as well. [5]

<u>Amici</u>

There were no amici below; however an amicus was appointed in Menoken's prior appeal (*identified infra* at v) to participate in supplemental briefing on her "interference" claim under the Rehabilitation Act. For reasons that remain unexplained, the assigned Merits Panel was not provided Menoken's

---

[3]   EEOC Brf. at i.
[4]   [R. 120] (Dec. 19, 2023 Tr.) at A1031 (28:11–14)
[5]   *See e.g.* [R. 41] (Meet and Confer Report) at A236 - A237 (Menoken objection) and A242 (Counsel's suggestion that disputed claims were against the Commission).

ii

supplemental Brief, leading the Panel to believe Menoken had "joined" the amicus' brief *when she had **not***. In fact, Menoken filed her Brief a week *before* the amicus, begging the question: *how could she have "joined" a brief she had not even read?* Menoken contacted the Clerk's Office seeking corrective action without success.⁶ The incident is among a litany of prejudicial "anomalies" associated with the court's processing of this case and others relating thereto.⁷

II.     **Rulings Under Review**

Menoken considers all adverse rulings -- and prejudicial *non*-rulings -- to be *presumptively* in question given concerns (documented in and outside this record) calling the integrity and fairness of the district court proceeding into serious question. The Notice of Appeal identifies **13** specific rulings evincing Judge Friedrich's hostility toward Menoken and her claims. [R. 118] A1205-A1208. The Court is urged to view all rulings (and failures to rule) through the prism of these concerns and direct that the following *specific* Orders be VACATED:

1. The February 2, 2023 Order on summary judgment [R. 52] A786;

2. The June 5, 2023 Orders denying Clarification, Reconsideration and Judicial Notice; [R. 61] A927; and

3. The January 12, 2024 Order of dismissal under Fed. R. Civ. P. 41(b) [R. 116] A1195.

---

⁶   *See* [R. 35-3] A193 (Menoken Declaration) at A194 (¶¶ 12-13) and A196 (Menoken Letter to the Circuit Clerk).
⁷   *Id.* at A194 (¶¶ 8-11) (describing processing anomalies in Menoken cases).

## *Government Counsel's Certification As To Rulings*

Citing the district court's summary judgment **opinion** -- but *not* the disputed **Order** -- Government Counsel certifies that the dismissal of "certain" of Menoken's "claims" is "ostensibly" at issue in this appeal.[8] His Brief is riddled with subtle "messaging" on unresolved disputed issues; this statement is a prime example.[9]

Counsel is well aware the district court's summary judgment ruling did not purport to dismiss (or even address) Menoken's ***"claims***." Indeed, the lack of clarity on this point was one of the reasons the litigation went "off the rails" as the trial date approached. Menoken predicted the chaos,[10] but the Government and the court insisted clarification was not needed because Rule 56 authorizes summary judgment on a "theory" underlying a claim.[11] While that may be true, the court never explained the practical *effect* of dismissing "theories" **that Menoken never advanced**.

---

[8]   EEOC Brf. at ii.
[9]   Menoken had initially planned to challenge Judge Friedrich's substantive rulings *and* her palpable bias.  *See* Statement of Issues [Doc. No. 2860907] (entered June 21, 2024). However, she decided that substantive issues would be more efficiently addressed on remand -- before an impartial Judge.
[10]   *See* [R. 62] A934 (Joint Status Report) at 935 (noting parties' "divergent views" on the scope of the trial); and [R. 120] A939 (Transcript Aug. 3, 2023 Status Conference) at A942 (re: uncertainty in predicting length of the trial because parties are on "different planets when it comes to what this case is about.")
[11]   *See* [R. 58] A805 (Government's Opposition to [56] Motion for Clarification and Reconsideration) at A898 ("[T]he Court is permitted to grant or deny summary Judgment on any **part** of a claim"] (bolded added); *see also*  [R. 61] A927 (Order denying clarification and reconsideration) at 928 ("[The court] may grant summary judgment as to some **theories** underlying a claim but deny summary judgment as to others.")  (bold added)

III.  **Related Cases**

    A.  <u>Cases Pending In Court</u>

There are no cases pending in any other court involving the same parties and the same or similar issues, although this case was previously before *this* Court under Appeal No. 18-5284. The decision is reported as *Menoken v. Dhillon*, 975 F.3d 1 (D.C. Cir. 2020). This appeal may require that the Court address issues debated below regarding the proper interpretation of the Court's Judgment.

    B.  <u>Cases Previously Before This Court</u>

The parties apparently agree this case is related to the following cases *previously* before this Court: 1) *Menoken v. Berry* [12] (**Menoken I**);  2) *Menoken v. McGettigan* [13] (**Menoken II**); 3) *Menoken v. Weichert* [14] (**Menoken III**); and 4) *Menoken v. Kerner* [15] (**the Kerner action**). Menoken's rationale for designating these cases as related is explained in the "Revised" Certification filed in the prior appeal which is included in the Appendix at [R 45-17] A694-A700. [16]

---

[12]  408 Fed. App'x 370 (D.C. Cir. 2010).
[13]  No. 17-5228, 2018 WL 2383278 (D.C. Cir. May 9, 2018).
[14]  No. 19-5319, 2020 WL 1487743 (D.C. Cir. Mar. 12, 2020).
[15]  741 Fed. App'x 817 (D.C. Cir. 2018).
[16]  Government Counsel does not explain why Menoken I-III are included in his certification. One can assume he wants to highlight the Government's history of success. Menoken wishes the Court to know that the prejudicial pattern of "anomalies" noted herein materially contributed to that success. *See* [R. 35-3] at A193-A196 (summary of Menoken I-III anomalies).

C.    A Case Previously Before The Federal Circuit

*Menoken v. Merit Sys. Prot. Bd*. [17] is another case related to this case. The events that formed the basis of the claim in that case *also* formed a basis for a claim in *this* case. [18]

The Federal Circuit appeal involved a claim filed against EEOC after Menoken learned that Robbie Dix (her supervisor) and Shelita Aldrich (OHR Branch Chief) had secretly accessed her QuickTime account to *change* her pay codes for the period covered by a government shutdown that lasted from December 22, 2018 until January 28, 2019. [R 57-1] A879 (Menoken Declaration); *see also* A886 (Menoken email). [19] Their goal in falsifying her leave records was to *block* Menoken from being paid when the government reopened -- which is what happened -- resulting in a loss of more than ten thousand dollars -- three days before her coerced departure. Menoken filed an appeal with the MSPB asserting that EEOC had effectively suspended her without due process.

---

[17]   2023 WL 5970783 (Fed. Cir. 2023)
[18]   The facts underlying the due process claim before the Federal Circuit also formed the basis of a claim litigated in this action (under the theory of retaliation). *See* Plaintiff's Motion for Order Taking Judicial Notice of Related Federal Circuit Proceeding. [R. 57] at A849. The motion was denied with the court adopting the Government's view that Menoken's Federal Circuit case was "irrelevant" to this case  [R. 61] at A932.
[19]   Menoken email to Aldrich (copying Dix and others) stating: "*I am aware of no legal or factual basis for placing me on LWOP for this period.*" (no response).

The Board dismissed the appeal on "jurisdictional" grounds upon adopting EEOC's *reframed* version of Menoken's claim.  Notably, when she challenged the dismissal in an appeal to the Federal Circuit,  EEOC elected **not** to defend itself in the proceeding -- obviously concerned about the fact that it was litigating *the same malicious acts* in *this* case ( under Title VII and the Rehabilitation Act).  One can only assume the Government's army of attorneys (at EEOC, DOJ, OPM and the Board) weighed the risks and decided it was best that the *Board*  defend EEOC's conduct in the circuit proceeding. The court affirmed the "jurisdictional" dismissal of Menoken's due process appeal (as *reframed* by the Board -- on EEOC's behalf).

### *The Federal Circuit Case Is Not Mentioned  By Government Counsel*

The Undersigned notes that Government Counsel's certification does not mention Menoken's Federal Circuit case even though it is within the scope of Circuit Rule 28 (a) (1) (C). There is no suggestion of disagreement-- just silence; as is often the case when the Government simply *prefers* not to engage. Notably, among indicia of relatedness are QuickTime documents in the Federal Circuit record that squarely **contradict** the Government's contention in <u>*this*</u> case that Menoken's supervisors lacked the "technical ability" to change her leave codes. *See* [R. 42] A252 (Sum. Judg. Mot.) at A273. Agency records clearly show otherwise. [R. 57] A49 (Judic. Not Mot.) at A872 (**Fenwick** "verifying" ***Menoken's*** time -- with Dix's "certification" -- for pay period preceding 2019 government shutdown).

C. <u>Administrative EEO Complaints Awaiting Appellate Adjudication</u>

This will confirm the Undersigned's understanding that Government Counsel does not dispute that the following administrative appeals, currently before EEOC, are related to this case: EEOC Appeal Nos. 202300092; 202300093; and 202000345. Each involves claims of ongoing retaliation traceable to 2012, when Menoken criticized an attempt by Claudia Withers (EEOC's COO at the time) to use Menoken's need for a reasonable accommodation as a "bargaining chip" to protect EEOC from potential legal exposure for its unethical adjudications of Menoken's OPM appeals. [R. 45-6] (Menoken Declaration) A663-A670 at A667 (para. 67).

Signed this 15th day of April, 2025 by:

/s/ *Cassandra M. Menoken*

## TABLE OF CONTENTS

                                                                                           **Page**

RULE 28 (a)(1) CERTIFICATION (AMENDED)..................................................i

TABLE OF AUTHORITIES..................................................................................1

STATUTES AND REGULATIONS .....................................................................1

PRELIMINARY STATEMENT ...........................................................................2

      CONTEXTUALIZED PRELUDE TO ARGUMENT..................................2

SUMMARY OF ARGUMENT..............................................................................4

ARGUMENT .........................................................................................................5

      A.    MENOKEN IS ENTITLED TO RELIEF UNDER
             THE RECUSAL STATUTE……………………………………………..5

      B.    THE ABUSE OF DISCRETION STANDARD SHOULD
             NOT BE APPLIED ……………………………………………………….5

      C.    MENOKEN DID NOT FORFEIT ARGUMENT RE: THE
             FACIAL DEFICIENCY OF THE DISMISSAL ORDER ……………6

CONCLUSION………………………………………………………………… 6

CERTIFICATE OF COMPLIANCE …………………………………………..7

CERTIFICATE OF SERVICE …………………………………………………7

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Gardner v. United States*,
    211 F.3d 1305 (D.C. Cir. 2000) ...................................................................6

*Menoken v. Dhillard*,
    975 F. 3d 1 (D.C. Cir 2020) ........................................................................1

*Shepherd v. American Broadcasting Comp,Inc.,* 62 F.3d 1469 (D.C. Cir.
    1995) ............................................................................................................6

*United States v. Gaskins, 6 F.4th 1350 (D.C. Cir. 2021)* .........................................5

**Statutes & OtherAuthorities:**

28 U.S.C. §455 ......................................................................................................5
Fed. R. Civ. P. 41(b) ..............................................................................................6

## PRELIMINARY STATEMENT

As shown in Menoken's commentary on Government Counsel's certification under Circuit Rule 28 (a)(1), the Court must carefully scrutinize EEOC's Brief, *including Counsel's certification*, to make an assessment as to trustworthiness and truth.  Over the years -- indeed decades -- Government attorneys (within and outside of DOJ) have been masterful in their use of muddled "messaging " and ethically questionable "spin"  to maintain their control of the narrative.  Sometimes the antics are aided by the court or the Clerk's Office -- or *both* -- as may have happened here.[1]

A fundamental question lurking in the background in this appeal is whether EEOC's Government Counsel have exceeded the boundaries of acceptable advocacy. Menoken says yes and hastens to add that the integrity of the district court proceeding would not have been compromised -- on the sheer scale that it was --had the judge not violated Judicial Canons and her statutory duty to be fair and impartial.

Menoken herein responds to EEOC's Brief, noting (as she always must in this litigation) that she does not undertake to address or squarely refute every false and misleading assertion sponsored by Government Counsel in his brief; just those necessary  to show that the Government has provided no basis for the Court to deny Menoken the relief she has requested in this appeal.

---

[1]   *See e.g,* Brief of Appellant [Corrected] (March 3, 2025) at 12-13 (re: "suspicious" delay**s** (plural) in reopening this case and other circumstances that could cause a fully informed and objective observer to question whether Judge Friedrich's assignment to this case was "random."

- 1 -

## CONTEXUALIZED PRELUDE TO ARGUMENT

In order to evaluate the validity of the parties' legal arguments there must be clarity on the operative facts --something the Government obviously seeks to avoid. EEOC's Brief is a repetitious and tediously worded 60 page document flooded with selective *excerpts* from the record and quotes that seemingly go on forever. It is a familiar template previously described by Menoken as follows:

> [A] veritable **starburst** of *half-truths*, *untruths* and *truths* with no discernible significance – rooted in "facts" drawn from cherry picked *words* in various documents -- often temporally unrelated – *grouped* together in sentences that form arguments devoid of merit or common sense. "Inconvenient" truths are ignored … or otherwise lost amid tedious verbiage ….[2]

The Brief is structured to confuse in order create an *illusion* that the stated rationale for dismissing Menoken's action is supported by actual *facts* when the *truth* is it's not. The following chronology provides factual context. [**Note**: all operative events unfolded against the backdrop of the vague but persistent criticism that Menoken was not doing enough to "narrow" her claims.] [3]

### Events Leading To Chaos

Menoken's action was dismissed January 12, 2024 -- five days before the trial was to start and four days *after* the case began a precipitous descent into unwieldy

---

[2]   [R. 47-1] A328 (Plaintiff's Opposition to Motion for Summary Judgment) at 329.
[3]   *See* [R. 97] A1078 (Defendant's Motion for Expedited Order Requiring Plaintiff to Confirm She Will Comply with the Court's Orders).

chaos.[4] The turning point was January 5, 2024. That's when Judge Friedrich -- in the midst of a frenetic period of pretrial activity -- suddenly issued a show cause order -- *sua sponte* -- questioning (*on **behalf** of the Government*) whether Menoken's trial exhibits had been produced in discovery; and directing that, in any event, she bate stamp the documents described on her exhibits list and produce them to the Government **within three days**. A19 (January 5 Minute Order). No corresponding directive was issued to the Government.

In the Order, Judge Friedrich noted concern (*again on **behalf** of the Government*) that the document descriptions in Menoken's Exhibit List were insufficient to allow the Government to identify the documents Menoken planned to use at trial. The Court is invited to review both parties' lists.  Menoken's can be found in the Appendix at [R. 98] A1088 (Pretrial Statement) at A1095-A1096. The Government's can be found at [R. 95-2] A1064 at A1077.  Note that the Government's list includes at least seven entries relating to correspondence -- *identifying no author or recipient* [5] -- and countless other correspondence identifying only one **_or_** the other.

The precipitous descent into chaos began on January 8, 2024.  That's when Menoken responded to the court's January 5 show cause order by objecting to Judge Friedrich's hostility toward her and noting that she would not prioritize producing her

---

[4]　This litigation has always had a level of chaos operating just below the surface, but not on the level that erupted in the weeks preceding the scheduled trial date.
[5]　*See* descriptions of Exhibit Nos. 7,10,12,13,24,27 and 44.

exhibits to the Government absent any order directing the Government to produce its exhibits to her. The court expressed dissatisfaction with Menoken's January 8 filing and scheduled a conference for January 9. When Menoken did not attend Judge Friedrich decided to engaged with AUSA Dreier *ex parte*, whereupon the two agreed that the Government would file a motion to dismiss the next day and that Menoken would be given 24 hours to respond  *See* Menoken (Corrected) Brief at 16 (re: *ex parte* agreement between Judge Friedrich and AUSA Dreier on January 9); *see also* [R. 121] A1119 (January 9 Hearing Transcript) *generally.*

## SUMMARY OF ARGUMENT

It is significant -- and arguably dispositive -- that the Government chose not to substantively engage on Menoken's contention that Judge Friedrich materially compromised the integrity of the district court proceeding. It is also significant -- and arguably dispositive -- that EEOC' Brief  ignores evidence showing that the *decision* to dismiss Menoken's action was *actually* made on January 9, 2024, notwithstanding the fact that the Order was not issued until January 12.

The Government is incorrect in its contention that Menoken made only "one" argument in this appeal. A party's choice not to address an argument does not make it magically disappear. The Government insists that the "one" argument it has chosen to acknowledge, was forfeited when Menoken failed to make it before the district judge.

# ARGUMENT

### A.  Menoken Is Entitled To Relief Under The Recusal Statute

The Government's decision not to engage on Menoken's argument that Judge Friedrich materially compromised the integrity of the proceedings below requires this Court to conclude that her participation in the proceedings violated 28 U.S.C. § 455(a). Section 455 (a) imposes an affirmative duty on a federal judge "to disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned."

The Government seems to believe (Brf at 47) Menoken's failure to file a recusal motion forecloses all relief, although it cites no authority involving circumstances comparable to those present in this case.  Menoken believes it highly unlikely that this Court would allow a procedural technicality to foreclose corrective action where the record reveals judicial abuse and actual harm. *Cf. United States v. Gaskins, 6 F.4th 1350, 1366 (D.C. Cir. 2021)* ("Evidence of bias in a particular case could, of course, necessitate remand to a different judge"). At the very least, the Court should refrain from according discretionary "deference" to any ruling made by a judge shown to have been biased.

### B.  The "Abuse of Discretion"  Standard Should Not Be Applied

Menoken argued in her Brief (at 15) that the Dismissal Order provides no evidentiary basis for the court's hyperbolic accusation that Menoken caused "disruption" and "prejudice" in the proceeding. The Government did not acknowledge this as one of Menoken arguments and thus chose not to engage. As a result, the Court

- 5 -

may properly conclude that it is undisputed that the record does not substantiate the stated rationale for dismissing Menoken's action under Rule 41(b) . The dismissal thus fails to meet the standard in this Circuit for affirming such a harsh and punitive sanction.  The Dismissal Order must therefore be vacated. *See Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000) (justification for dismissal under Rule 41(b) not "easily met"); *see also Shepherd v. American Broadcasting Comp,Inc.,* 62 F.3d 1469, 1473 (D.C. Cir. 1995) ("inherent power" sanctions are punitive in nature requiring that predicating conduct be shown by clear and convincing evidence).

    C.   <u>The Argument Re: The Order's Facial Deficiency Was Not Forfeited</u>

According to the Government, Menoken has "forfeited" her challenge to the facial sufficiency of the Dismissal Order, as a matter of law.  But it cites no authority for any "exhaustion" requirement associated with challenging a Rule 41(b) Order on appeal. And the notion that Menoken should have somehow *anticipated* the Order would be deficient -- and positioned herself to seek an alternative sanction -- makes no sense.  Besides, to have requested an alternative sanction would have required that she concede having engaged in sanctionable conduct -- which she does not.

## CONCLUSION

For all of the foregoing reasons, and in the interest of fairness and justice, Menoken urges that the relief requested in her initial Brief be granted.

>Respectfully submitted,
>
>/s *Cassandra M. Menoken*
>Cassandra M. Menoken, Esq.
>131 Tennessee Avenue NE
>Washington, D.C. 20002
>Ph: (202) 546-7671
>CMMEsqDC@gmail.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*2854*] words.

    [   ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief document complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: April 15, 2025                    /s/ Cassandra M. Menoken
                                         *Pro Se*

19