ORAL ARGUMENT NOT YET SCHEDULED

In the
# UNITED STATES COURT OF APPEALS
For the District of Columbia Circuit

_____

Appeal No. 24-5052
_____

CASSANDRA M. MENOKEN,

*Plaintiff-Appellants*

*vs.*

ANDREA R. LUCAS, ACTING CHAIR,
UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, *et al.*,

*Defendant-Appellees.*

_____

*On Appeal from the United States District Court
for the District of Columbia in Case No.* 1:16-cv-02480-DLF
Honorable Dabney L. Friedrich
_____

## APPELLANT'S REPLY BRIEF
### [CORRECTED]
_____

*Submitted by:*

Cassandra M. Menoken, Esq.
131 Tennessee Avenue N.E.
Washington, D.C. 20002
(202) 546-7671
CMMEsqDC@gmail.com
*Pro Se*

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES
*And*
# RESPONSE TO GOVERNMENT'S CERTIFICATE AS TO SAME [1]

The Undersigned, in her capacity as a party to this appeal and an officer of the court, herein amends the Certificate as to Parties Rulings and Related Cases filed with Appellant's Brief (as corrected on March 3, 2025). The Court is advised that the decision to amend was influenced by the Undersigned's assessment of the "certification" filed by EEOC's Government Counsel on March 14, 2025. [2] As a result, this filing includes responsive information for the Court to consider in assessing the truth and trustworthiness of the "certifications" filed in this appeal.

I. **Parties and Amici**

Parties

The Appellant, Cassandra M. Menoken, was the plaintiff in the district court proceeding. Charlotte A. Burrows (now former) Chair of the United States Equal Employment Opportunity Commission *and* EEOC were defendants in that proceeding. Andrea R. Lucas, current Acting EEOC Chair, is an Appellee in this proceeding. The "Commission"-- EEOC's policy and oversight body -- *has never been -- and is not now -- a party to this action*.

---

[1] Appellees are collectively referred to herein as the "Government." And while AUSA Dreier is personally responsible for filings bearing his signature, the term "Government Counsel," as used herein, encompasses all participating DOJ attorneys as well as Julie Ferguson Queen, Esq. and Anabia Hasan, Esq., -- in the Offices of General Counsel in OPM and EEOC -- and others unnamed at this time.

[2] *See* Brief for Appellee ("EEOC Brf.") at i-iii.

i

While acknowledging that EEOC has been *treated* as a party, Government Counsel appears to question Undersigned's certification identifying it as such.[3] Citing (among other sources) Judge Friedrich's purported "finding" on the matter -- based on the transcript of a December 19, 2023 hearing -- Government Counsel directs attention to the following statement in her Dismissal Order: "**[T]he parties agree**…**the Commission Chair is the sole defendant in this case**…." [R. 116] A1195 at n.1 (bolding added).  The cited transcript, however, reveals no such "agreement" -- only the court's acceptance of AUSA Dreier's *assertion* that there was agreement [4]-- which is *not true*. In any event, it is unclear how the Government's position that the Chair is the "sole" defendant can be squared with random filings implying (over Menoken's objections) that its Counsel represent the "Commission" as well. [5]

Amici

There were no amici below; however an amicus was appointed in a prior appeal (*identified infra*) to participate in supplemental briefing on Menoken's "interference" claim under the Rehabilitation Act.  For reasons unexplained, the assigned Merits Panel was not provided Menoken's supplemental Brief, leading the Panel to believe Menoken had "joined" the amicus *when she had **not***. In fact, Menoken filed her Brief a week *before* the amicus, begging the question: *how could she have "joined" a brief she had not even read?* Menoken contacted the Clerk's Office seeking corrective

---

[3]   EEOC Brf. at i.
[4]   [R. 120] (Dec. 19, 2023 Tr.) at A1031 (28:11–14).
[5]   *See e.g.* [R. 41] (Meet and Confer Report) at A236 - A237 (Menoken objection) and A242 (Counsel's suggestion that claims are against the "Commission").

ii

action with no success. [6] The incident is among a litany of prejudicial "anomalies" associated with the court's processing of this case and others relating thereto. [7]

## II. Rulings Under Review

Menoken considers all adverse rulings -- and prejudicial *non*-rulings -- to be *presumptively* in question given concerns (documented in and outside this record) calling the integrity and fairness of the district court proceeding into serious question. The Notice of Appeal identifies **13** rulings evincing Judge Friedrich's hostility toward Menoken and her claims. [R. 118] A1205. The Court is urged to view all rulings (and failures to rule) through the prism of these concerns and direct that the following *specific* Orders be VACATED:

1. The February 2, 2023 Order on summary judgment [R. 52] A786;

2. The June 5, 2023 Orders denying Clarification, Reconsideration and Judicial Notice; [R. 61] A927; and

3. The January 12, 2024 Order of dismissal under Fed. R. Civ. P. 41(b) [R. 116] A1195.

---

[6] *See* [R. 35-3] A193 (Menoken Declaration) at A194 (¶¶ 12-13) and A196 (Menoken Letter to the Circuit Clerk)

[7] *Id.* at A194 (¶¶ 8-11) (describing processing anomalies in Menoken cases)

iii

### *Government Counsel's Certification As To Rulings*

Citing the district court's summary judgment **opinion** -- but *not* the disputed **Order** -- Government Counsel certifies (Brf at ii) that "ostensibly" the dismissal of "certain" of Menoken's "claims" is at issue in this appeal. His Brief is riddled with subtle "messaging" and this statement is a prime example. [8]

Counsel is well aware the district court's summary judgment Order did not purport to dismiss (or even address) Menoken's ***"claims."*** Indeed, the lack of clarity on this point was a major reason the litigation went "off the rails." Menoken predicted the chaos [9] -- but was rebuffed -- and then ignored. The Government and the court insisted no clarification was needed because Rule 56 authorizes summary judgment on a "theory" underlying a claim.[10] While that may be true, the court never explained the practical *effect* of granting summary judgment to EEOC on "theories" ***Menoken had never advanced.***

---

[8]     Menoken had initially planned to challenge Judge Friedrich's substantive rulings *and* her palpable bias. *See* Issues Statement [Doc. No. 2860907] (entered June 21, 2024). However, she decided it would be more efficient to address substantive issues on remand -- before an impartial Judge.

[9]     *See* [R. 62] A934 (Joint Status Report) at 935 (noting parties' "divergent views" on the scope of the trial); and [R. 120] A939 (Tr. Aug. 3, 2023 Conf.) at A942 (noting uncertainty in predicting length of the trial because the parties are on *"different planets when it comes to what this case is about."*).

[10]    *See* [R. 58] A805 (Opp. to Mot. for Clarif. and Recon.) at A898 ("[T]he Court is permitted to grant or deny summary Judgment on any **part** of a claim"] (bolded added); *and* [R. 61] A927 (Order denying clarification) at 928 ("[The court] may grant summary judgment as to some **theories** underlying a claim …") (bold added)

iv

**III    Related Cases**

    A.  <u>Cases Pending In Court</u>

There are no cases in any other court involving the same parties and the same or similar issues, although this case was previously before *this* Court under Appeal No. 18-5284.  The decision is reported as  *Menoken v. Dhillon*, 975 F.3d 1 (D.C. Cir. 2020).

    B.     <u>Cases Previously Before This Court</u>

The parties apparently still agree this case is related to the following cases *previously* before this Court: 1) *Menoken v. Berry*  (**Menoken I**);  2) *Menoken v McGettigan*  (**Menoken II**); 3) *Menoken v. Weichert*  (**Menoken III**); and 4) *Menoken v. Kerner*  (**the Kerner action**).[11] Menoken's rationale for designating them as related is explained in the "Revised" Certification filed in the prior appeal which is included in the Appendix at [R 45-17] A694-A700. [12]

---

[11]   408 Fed. App'x 370 (D.C. Cir. 2010) (Menoken I);  2018 WL 2383278 (D.C. Cir. 2018) (Menoken II);  2020 WL 1487743 (D.C. Cir. 2020); (Menoken III); 741 Fed. App'x. 817 (D.C. Cir. 2018) (Kerner [mandamus] Action)

[12]    Government Counsel does not explain why Menoken I-III are included in his certification. One can assume he seeks to highlight the Government's history of success. Menoken wishes the Court to know that the prejudicial "anomalies" noted herein materially contributed to that success. *See* [R. 35-3] at A193-A196 (summary of Menoken I-III anomalies).

C.    A Case Previously Before The Federal Circuit

*Menoken v. Merit Sys. Prot. Bd*.[13] is another case related to this case. The events that formed the basis of the "due process" claim in that case *also* formed a basis for retaliation claims in *this* case.

The Federal Circuit matter involved a claim filed against EEOC in 2019 after Menoken learned that Robbie Dix (her supervisor) and Mellissa Fenwick (Hadden's assistant) had secretly accessed her QuickTime account to *change* her pay codes for the period preceding a government shutdown that lasted from December 22, 2018 until January 28, 2019. [R 57-1] A879 (Menoken Declaration). Dix's goal in falsifying her leave records was to *block* Menoken from being paid when the government reopened -- which is what happened -- resulting in a loss of more than ten thousand dollars. Menoken filed an appeal with the MSPB asserting that, by placing her in non-pay status -- without her knowledge or consent-- EEOC had effectively suspended her without due process.

The Board dismissed the appeal on "jurisdictional" grounds upon adopting EEOC's *reframed* version of Menoken's claim. Notably, when she challenged the dismissal in an appeal to the Federal Circuit, EEOC elected **not** to defend itself in the proceeding -- obviously concerned about the fact that it was litigating *the same malicious acts* in *this* case (under Title VII and the Rehabilitation Act). One can only assume the Government's army of attorneys (at EEOC, DOJ, OPM and the

---

[13]    2023 WL 5970783 (Fed. Cir. 2023).

vi

Board) weighed the risks and decided it was best that the *Board* defend EEOC's conduct in the circuit proceeding. The court affirmed the "jurisdictional" dismissal of Menoken's due process appeal (as *reframed* by the Board -- on EEOC's behalf).

### *The Federal Circuit Case Is Not Mentioned By Government Counsel*

The Undersigned notes that Government Counsel's certification does not mention Menoken's Federal Circuit case even though it is within the scope of Circuit Rule 28 (a) (1) (C). There is no suggestion of disagreement-- just silence; as is often the case when the Government *prefers* not to engage. Notably, among indicia of relatedness are QuickTime documents in the Federal Circuit record that squarely **contradict** the Government's contention in ***this*** case that Menoken's supervisors lacked the "technical ability" to change her leave codes. *See* [R. 42] A252 (Sum. Judg. Mot.) at A273. However, agency records reflect otherwise. They show that Dix arranged for **Fenwick** to access **Menoken's** account to change her codes before the 2019 shutdown. [R. 57] A849 (Jud. Not Mot.) at A871-A872. Menoken did not realize the full effect of what had been done until the shutdown ended and she learned she would not be paid.[14]

D.  <u>Administrative EEO Complaints Awaiting Appellate Adjudication</u>

This will confirm the Undersigned's understanding that Government Counsel does not dispute that the following administrative appeals, currently pending before EEOC, are related to this case: Appeal Nos. 202300092; 202300093; and 202000345.

---

[14]  *See* Menoken email to Aldrich -- copying Dix and others -- stating: "*I am aware of no legal or factual basis for placing me on LWOP for this period."* (No one responded).

vii

Each involves claims of ongoing retaliation (*after her retirement and to this day*) traceable to Menoken's protest of EEOC's abusive attempt, in 2012, to use Menoken's need for a reasonable accommodation as a "bargaining chip" to legally protect EEOC from future exposure for its unethical adjudications of Menoken's OPM appeals. [R. 45-6] (Menoken Declaration) A663-A670 at A667 (para. 67).

    EXECUTED this 20th day of April, 2025 by:

/s/ *Cassandra M. Menoken*

## TABLE OF CONTENTS

                                                                                    **Page**

RULE 28 (a)(1) CERTIFICATION (AMENDED)......................................................i

TABLE OF AUTHORITIES.................................................................................x

STATUTES AND REGULATIONS ......................................................................x

PRELIMINARY STATEMENT ............................................................................1

      CONTEXTUALIZED PRELUDE TO ARGUMENT..................................2

SUMMARY OF ARGUMENT..............................................................................4

ARGUMENT ........................................................................................................5

      A.    MENOKEN IS ENTITLED TO RELIEF UNDER
            THE RECUSAL STATUTE………………………………………………..5

      B.    THE ABUSE OF DISCRETION STANDARD SHOULD
            NOT BE APPLIED ……………………………………………………………5

      C.    MENOKEN DID NOT FORFEIT ARGUMENT RE: THE
            LEGAL DEFICIENCY OF THE DISMISSAL ……….. …………… 7

CONCLUSION…………………………………………………………………. 7

CERTIFICATE OF COMPLIANCE ………………………………………………8

CERTIFICATE OF SERVICE …………………………………………………… 9

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page**

*Gardner v. United States*,
   211 F.3d 1305 (D.C. Cir. 2000) ................................................................ 6

*Shepherd v. American Broadcasting Comp,Inc.*,
   62 F.3d 1469 (D.C. Cir. (1995) ………………………………………… 6

*United States v. Gaskins,*
*6 F.4th 1350 (D.C. Cir. 2021)* ..................................................................... 5

## Statutes & Other Authorities:

28 U.S.C. §455 ............................................................................................. 5

Fed. R. Civ. P. 41(b) .................................................................................... 6

## PRELIMINARY STATEMENT

As shown in the foregoing responses to Government Counsel's certification under Circuit Rule 28 (a)(1), the Court must closely scrutinize the Government's filings, *including Counsel's certification*, to assess trustworthiness and truth.  Over the years -- indeed the decades -- Government attorneys (within and outside of DOJ) have been masterful in their use of subtle "messaging " and questionable "spin"  to control the narrative in this case.  Sometimes the antics are aided by the court and sometimes by the clerk's office -- and sometimes *both* -- as seems to have occurred here.[1]

A fundamental question lurking in the background in this appeal is whether EEOC's Government Counsel have exceeded the bounds of acceptable advocacy.  Menoken says yes -- and hastens to add that the proceeding below would not have been undermined on the  scale that it was -- had Judge Friedrich complied with her duty to be impartial and fair.

Menoken herein responds to EEOC's Brief, noting (as she always must) that she does not undertake to squarely refute every false and misleading assertion sponsored by Government Counsel; just those necessary  to show that the Government provides no basis for this Court to deny Menoken the corrective relief that she seeks.

---

[1]   *See e.g.* Brief of Appellant [Corrected] (March 3, 2025) at 12-13 (re: "suspicious" delay**s** (plural) in reopening this case on remand and other circumstances that would cause an informed and objective observer to question whether Judge Friedrich's assignment to the case was "random.")

## CONTEXUALIZED PRELUDE TO ARGUMENT

In order to evaluate the validity of the parties' arguments there must be clarity on the operative facts -- something the Government obviously prefers to avoid. EEOC's Brief is a busily worded 60 page *opus* flooded with record *excerpts* and verbatim quotes that seemingly go on forever. It is a familiar template previously described in this litigation as follows:

> [A] veritable **starburst** of *half-truths*, *untruths* and *truths* with no discernible significance – rooted in 'facts' drawn from cherry picked *words* in various documents -- often temporally unrelated – *grouped* in sentences that form arguments devoid of merit or common sense. 'Inconvenient' truths are ignored… or otherwise lost amid tedious verbiage. [2]

The Brief is structured to confuse the reader and create the *illusion* that the rationale for dismissing Menoken's action is supported by actual *facts* when the *truth* is it's not. The following chronology is provided to assist the Court in understanding the events that led to the dismissal -- which unfolded over the course of five days against the backdrop of the Government's vague, but unrelenting, complaint that Menoken was not doing enough to "narrow" her claims. [3]

---

[2]   [R. 47-1] A328 (Opposition to Motion for Summary Judgment) at A329.
[3]   *See* [R. 97] A1078 (Defendant's Motion for Expedited Order Requiring Plaintiff to Confirm She Will Comply with the Court's Orders).

2

Operative Events Culminating In Chaos

Menoken's action was dismissed January 12, 2024 -- five days before trial was to begin and four days *after* the case began spiraling into chaos. The turning point was January 5, 2024, when -- in the midst of a frenetic period of pretrial activity --Judge Friedrich suddenly issued a show cause order -- *sua sponte* -- questioning (**on behalf of** *the Government*) whether Menoken's trial exhibits had been produced in discovery; and directing, in any event, that Menoken bate stamp documents identified in her Exhibit List and produce them to the Government **within three days**. *See* A19 (Jan 5 Min. Order) . No corresponding requirement was imposed on the Government.

In her Order (*speaking, again,* **on behalf of** *the Government*), the Judge noted concern that the documents listed in Menoken's Exhibit List were inadequately described and that the Government could not discern the documents Menoken planned to use at the trial. The Court is invited to assess the legitimacy of the concern by reviewing the Exhibit Lists filed by both parties.[4] One would think a *genuine* concern over description "adequacy" would include an assessment of the Government's List which includes *correspondence* (*e.g.* letters, emails, *etc*.) with no reference *to an author or a recipient* (Nos.7, 10, 12, 13, 24, 27 & 44) and countless other such entries identifying only an author **or** a recipient (but not both). EEOC's List shows that the January 5 Order was not about "case management." It was part of a dedicated effort to wear Menoken down.

---

[4]   Menoken's Exhibit List is located at [R. 98] A1088 (Plaintiff's Pretrial Statement) at A1095-A1096. The Government's List is located at [R. 95-2] A1064 at A1077.

3

The spiral into chaos began on January 8, 2024. That's when Menoken timely responded to the January 5 Order noting her objection to the court's obvious favoritism toward the Government and palpable hostility toward her. Menoken advised the court that she would not prioritize producing her exhibits to the Government absent an order from the court directing the Government to do the same. [R. 108] A1127 at A1128-1129.

The court expressed dissatisfaction with Menoken's January 8 filing (*see* Minute Order at A19) and scheduled a conference for the following day (January 9). When Menoken did not attend, Judge Friedrich engaged, *ex parte,* with AUSA Dreier, whereupon the two *agreed* that the Government would file a motion to dismiss on January 10 and that Menoken would be given 24 hours to respond. *See* Appellant's (Corrected) Brief at 16 (re: "stunning" interaction between Judge Friedrich and AUSA Dreier); *see generally* [R. 121] A1119 (January 9 Hearing Transcript).

## SUMMARY OF ARGUMENT

It is significant -- and arguably dispositive -- that the Government chose not to engage on Menoken's contention that Judge Friedrich materially compromised the remand proceeding. It is also significant -- and arguably dispositive -- that EEOC's Brief ignores evidence showing that the actual *decision* to dismiss Menoken's action was *made* on January 9 (although the Order was not entered until January 12).

The Government is incorrect in its contention that Menoken made only "one" argument in this appeal; and its response to that argument makes no practical sense.

4

# ARGUMENT

## A. <u>Menoken Is Entitled To Relief Under The Recusal Statute</u>

The Government's decision not to engage on Menoken's argument that Judge Friedrich materially compromised the remand proceeding requires the Court to rule that her participation in the proceeding violated 28 U.S.C. § 455(a). Section 455(a) imposes an affirmative duty on a federal judge "to disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." Menoken cannot speak to Judge Friedrich's motive(s) for accepting assignment to this case. She can only say, with certainty, that § 455(a) required that she not. The Court is urged to so rule and thereby order corrective relief.

The Government argues (Brf. at 47) that Menoken's failure to file a recusal motion forecloses relief in this appeal. However, it cites no authority involving circumstances comparable to those present here. Menoken believes it unlikely this Court would allow a "process" concern to foreclose relief where the record reveals ethical abuse on the scale it occurred here. *Cf. United States v. Gaskins,* 6 F.4th 1350, 1366 (D.C. Cir. 2021) ("Evidence of bias in a particular case could … necessitate remand to a different judge").

## B. <u>The "Abuse of Discretion" Standard Should Not Be Applied</u>

The Court should reject the "abuse of discretion" review standard proposed by the Government. Even if it were true that relief is foreclosed absent a motion

5

under § 455(a) (which it is not), it does not follow that this Court should accord "deference" to a district court's rationale for dismissing an action under Rule 41(b) where the record actually supports a finding that the ruling is, not only flawed, but ethically "tainted."

Notably, the Government does not engage on Menoken's argument (Brf. at 15) that the stated rationale for dismissing this case is "hyperbolic" and unsubstantiated. The Court may thus find it undisputed that the Dismissal Order does not meet the standard in this Circuit for affirmance. *See Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000) (justification for Rule 41(b) dismissal not "easily met"); *see also Shepherd v. American Broadcasting Company, Inc.,* 62 F.3d 1469, 1473 (D.C. Cir. 1995) ("inherent power" sanctions are punitive in nature requiring that predicating conduct be shown by clear and convincing evidence).

While there was indeed "disruption" in the case, it was not caused by any "misconduct" on the part of Menoken. It was rather the product of Judge Friedrich's efforts to coerce Menoken into accommodating the Government's vague demand that she *do* something to "narrow" her claims. *See* discussion *supra* at 3-4. And the only person harmed by the disruption was Menoken, who -- five years after this Court's remand -- finds herself before this Court again -- for the sixth time.

6

### C. **<u>Menoken Did Not Forfeit Arguments Re: Legal Sufficiency</u>**

The "one" argument the Government acknowledges and undertakes to dispute is Menoken's contention that the Dismissal Order is fatally flawed *as a matter of law*. Conceding the court's failure to consider a lesser sanction -- *as it was required to do* -- Counsel insists any challenge on this ground was forfeited when Menoken failed to *seek* a lessor sanction from the court. But he cites no authority for suggesting that a procedurally flawed and facially deficient Rule 41(b) Order cannot be challenged directly on appeal.

Indeed, the notion that Menoken should have *anticipated* that the Dismissal Order would be fatally flawed -- and somehow positioned herself to seek an alternative sanction -- makes no sense. Besides, to have sought an alternative sanction would have required that Menoken concede having engaged in sanctionable conduct -- which she does not.

### CONCLUSION

For the foregoing reasons, and in the interests of justice and the integrity of judicial proceedings, Menoken urges that her requested relief be granted.

Respectfully submitted,

<u>/s *Cassandra M. Menoken*</u>
Cassandra M. Menoken, Esq.
131 Tennessee Avenue NE
Washington, D.C. 20002
Ph: (202) 546-7671
CMMEsqDC@gmail.com

7

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [1539] words.

[   ] this brief uses a monospaced type and contains [*number*] lines of text.

2. This brief document complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: April 20,2025                                          /s/ *Cassandra M. Menoken*

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 21st day of April 2025, I caused Appellant's Corrected Reply Brief to be served electronically on Douglas C. Dreier, Esq via the CM/ECF System.  I further certify that I caused the required copies of Appellant's Corrected Reply Brief to be hand filed with the Clerk of the Court.

/s/ Cassandra M. Menoken